(No. 26842.—

PEARLEY LEE GUFFEY, Appellant, *vs.* CALVIN WASHBURN, Appellee.

*Opinion filed January 21, 1943—Rehearing denied March 11, 1943.*

Matheny & Welker, and Wham & Wham, for appellant.

Robert G. Burnside, and Provine, Williams & Pinkerton, for appellee.

Mr. Chief Justice Stone delivered the opinion of the court:

Appellant filed a bill in the circuit court of Fayette county seeking reconveyance to him of title to a certain 40-acre tract of land in that county, and for accounting. He says in his complaint that he purchased the land but the title was transferred to appellee because he acted as surety on the note which appellant gave for the loan of money with which to buy this tract. The complaint alleges that the understanding was that if appellant paid off this note, the land would be reconveyed to him. He alleges the note was paid but that appellee had possession of the land from October, 1924, until August 15, 1938, when appellee, without appellant's knowledge or consent, leased the tract for

oil and gas, and has since received very large rentals or royalties, for which he has refused to account, and that prior to that time the land was vacant and unoccupied. A hearing was had before the chancellor on the issues made up on the complaint and answer. He dismissed the complaint for want of equity.

The defense was that plaintiff was barred by limitations and *laches* and by a valid oral agreement by which release to the defendant of all claims which the plaintiff had in the land was made. The defendant avers that the plaintiff claimed no interest whatever in the land after the year 1925 up until the time when oil was discovered in 1938; that the defendant was in actual, open, visible, adverse possession since January, 1925, and has paid all taxes accruing thereon since, and has claimed to be the owner as against the plaintiff and all other persons; that most of this 40-acre tract was rough and untillable land and that about five or six acres in one corner of the tract were tillable and were rented by the defendant for a number of years, for which he received a small rental; that the plaintiff, though he knew of such rentals, at no time ever claimed any share therein, and that in 1925, at the time the agreement of release of any interest of the plaintiff was agreed upon, the defendant released and cancelled a debt against the plaintiff of $800, which plaintiff owed him, as consideration for his release.

The facts for most part are not in dispute. They show that these parties had engaged in timber-land transactions, appellee furnishing the money to purchase timber lands and marketing the logs when cut, while appellant secured a force of men and cut the timber and converted it into logs. These transactions continued from time to time, for the period from about 1922 or 1923 until 1938. This particular 40-acre tract was purchased in 1924 and the timber was taken off and the logs sold. Practically the only dis-

pute in the evidence pertains to the question of the release of claim or interest in the land and the existence of a debt, which, appellee says, was cancelled in consideration of such release. Appellee, in his testimony, stated that the appellant, in 1925, at the time this release was agreed upon, was indebted to him in the sum of $800 as a result of their transactions in connection with the purchase of lands and the cutting of the timber thereon.

A witness was called by appellee who testified to a conversation with appellant in 1928, concerning the purchase of the land, at which time appellant said that the land belonged to the appellee, the witness testifying that he, Guffey, stated "he didn't own the land; that it belonged to Cal Washburn; that he just worked the timber on it; that he wouldn't pay the taxes on it." Another witness named Bledsoe, testified that in a conversation with one John Hubbard, appellant told Hubbard he had a buyer and if the land was his he would let it go, but that Hubbard would have to see Washburn about it. Testimony of witnesses who had farmed the land in 1935 and 1936 was offered to show that appellant made no claim at any time for any portion of the rent. It is also shown in the record that the appellee, in 1932, mortgaged this property together with another tract of 55 acres. In 1938 the appellant, in an application for relief, stated over his signature that he owned no real estate and had no interest in real estate. Furthermore, the appellant, in his testimony as to the agreement by which the land was taken in the name of the appellee, stated: "I mean that in case I failed to pay off the note and live up to my agreement the land would be his."

Appellant denied the settlement testified to by the appellee and offered one witness who stated that in 1935 he had talked with the appellant about buying the land and was told to see the appellee and that whatever the latter did was all right with him, and that when he saw the

appellee the latter replied: "Whatever Lee said (referring to appellant). I haven't got much in it," and told the witness to go back and see the appellant, which the witness, however, never did. This in brief is a summary of the proof in the case on the point of appellant's claim to ownership.

Appellant insists that the proof established a resulting trust in the nature of a mortgage, since appellant purchased the land with funds borrowed by him and caused the deed to be made to appellee solely to protect the latter from loss on account of the suretyship, and appellee became a trustee holding legal title for the use and benefit of the appellant. His counsel also contends that a fiduciary relationship existed. Appellee on the other hand argues that the evidence shows merely an equitable mortgage which appellant released by an oral agreement and later abandoned the land and all claim to it, and acquiesced in the defendant's ownership, and that the statute of limitations and *laches* bar any claim now made by him.

Upon consideration of the testimony, we are of the opinion that the relationship between the parties in this transaction was that of debtor and creditor and no fiduciary relationship existed. The fact that they, prior to and after the execution of the deed, engaged in other business deals of like character, does not indicate a fiduciary relationship or that the appellee's dealings with appellant were of such a nature as to imply the relationship of trustee and *cestui que trust.* The deed given was an equitable mortgage and the relationship created was that of equitable mortgagor and mortgagee. (*Caraway* v. *Sly,* 222 Ill. 203; *Fitch* v. *Miller,* 200 id. 170; *Green* v. *Capps,* 142 id. 286.) The legal title was conveyed to appellee with an equity of redemption in appellant.

Appellant, in support of his theory that there was a fiduciary relationship existing and that the title was held

by appellant as trustee, cites cases decided by this court resting, however, on substantially different facts. Those were cases where a constructive trust had been raised. In each of them, such as *Kochorimbus* v. *Maggos,* 323 Ill. 510; *Kern* v. *Beatty,* 267 id. 127, and *Allen* v. *Jackson,* 122 id. 567, the element of fraud or fiduciary relationship existed and the court so found. There is no evidence of a fiduciary relationship existing between these parties. While they had numerous transactions covering a period of fifteen years or more, there is nothing to indicate that they were more than a business relationship, though the evidence tends to show that the appellee at times loaned sums of money to the appellant. The existence of friendship and the relationship of debtor and creditor do not of themselves show the existence of a fiduciary relationship. *Higgins* v. *Chicago Title and Trust Co.* 312 Ill. 11.

In this case the title to the property was taken in the name of Washburn, the appellee, by parol agreement between him and appellant. In such a case the rule is that an agreement, through which the mortgagor's interest in the property is released and abandoned, may rest in parol. (*Hutchison* v. *Page,* 246 Ill. 71; *Cramer* v. *Wilson,* 202 id. 83; *Scanlon* v. *Scanlon,* 134 id. 630.) Whether there was such a parol agreement and release, is a directly disputed issue of fact. The appellee declares that there was and appellant declares there was not. In order to determine where the weight of the testimony lies, it has been necessary to consider certain undisputed facts in this record. They are the facts that appellant, though he had paid taxes on the land before this supposed agreement, paid no taxes thereafter and made no claim to any interest in the rents; that he stated, according to some of appellee's witnesses, that he did not own the land, and stated in his application for relief that he did not own property, and he admitted that he made no demand for reconveyance

until after oil was discovered on the tract. These facts. tend to indicate that a settlement of some sort had been completed between them.

While appellant denies the statement that he abandoned any claim to the land, the facts from the record indicate that he did. It has long been the rule in equity that *laches* or long acquiescence will bar the right to recover in a case of this kind, where the attempt is made, as here, to establish a constructive trust, or a resulting trust. (*Korson* v. *Stathopulos,* 334 Ill. 193; *Lancaster* v. *Springer,* 239 id. 472; *Williams* v. *Rhodes,* 81 id. 571.) Appellant in this case was required to sustain the burden of proof as to the existence of a trust. (*Deadman* v. *Yantis,* 230 Ill. 243.) We are of the opinion that he has failed so to do.

Treating this debt as an equitable mortgage, it comes within the rule that the right to foreclose and the right to redeem are reciprocal, and when one is barred the other. is likewise barred. (*Fitch* v. *Miller, supra.*) The appellant's debt to appellee came due at the close of the timber operations on this 40-acre tract·in 1925. ·In treating this debt as an equitable mortgage, appellee's right to foreclose it was barred ten years after that date. So at this late day appellant must be held to be barred of a right to redeem, if such he had.

Unless the chancellor was moved to believe the testimony of appellant to the exclusion of the testimony of appellee and other witnesses who testified, he was justified in the finding made. He heard and saw the witnesses, observed their demeanor, and was in a better position to accord to their testimony true weight than we are from the printed record. He did not err in dismissing the appellant's complaint for want of equity, and the decree is affirmed.

*Decree affirmed.*