CREST INVESTMENT TRUST, INC. *v.* ALATZAS

[No. 192, September Term, 1971.]

*Decided February 22, 1972.*

The cause was argued before HAMMOND, C. J., and MCWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*Sidney Kaplan* for appellant.

*James S. Sfekas,* with whom was *John J. Schuchman* on the brief, for appellee.

MCWILLIAMS, J., delivered the opinion of the Court.

When Greek meets Greek, then comes the tug of war.[1] Triffona George Alatzas met Peter Angelides and sold him a restaurant, whence comes this tug of war. A year or so later (June 1968) Angelides[2] borrowed $18,333 from the appellant (Crest). When Angelides defaulted Alatzas foreclosed his lien. Crest says no notice of the foreclosure was "sent" to it. Thus is presented for our

---

1. Nathaniel Lee, *The Rival Queens,* Act IV, sc. 2 (1677).
2. Actually Crest's loan was made to Terminal Restaurant and Bar, Inc., a Maryland corporation owned by Angelides.

consideration, for the first time it seems, the nature of the "reasonable notification" required by Code (1964 Repl. Vol.), Art. 95B, § 9-504 (3), the Uniform Commercial Code.

As we shall see, the parties are not in complete agreement in respect of what happened. In early 1967 Alatzas occupied as lessee a building in east Baltimore in which he had a restaurant-cum-bar. In March he sold it to Angelides for $33,000, $16,000 of which was evidenced by a note secured by a recorded financing statement. He assigned the lease to Angelides but, of course, his own liability to the lessor was not thereby diminished. The financing statement evidencing Crest's loan was recorded on 21 June 1968. Whether Crest, at the time, was aware of Alatzas's lien is not altogether clear. One of its former attorneys, however, said he knew of the Alatzas lien prior to the foreclosure sale.

Although Alatzas had sold him "a good business, a very good business," Angelides fell behind in his payments to Alatzas and in mid-1969 he closed his doors. The public foreclosure sale was scheduled for 28 October. The auctioneer (Billig) caused the advertisement of sale to appear in the Baltimore Sun on the two Sundays before the sale and on the day of the sale. Alatzas concedes a written notice was not sent to Crest.

Despite credible evidence to the contrary Crest insists its only notice of the sale was received during a telephone conversation between Dennis Psoras, then of counsel for Alatzas, and Irving Bowers, of counsel for Crest, around 4:00 p.m. on the day before the sale. Bowers said he and Sidney Kaplan, also of counsel for Crest, tried, without success, to inform Crest's management of the impending sale and that as a result Crest was not represented at the sale. Bowers admitted talking to Angelides several times in September and October but, he said, Angelides never mentioned the imminence of the sale, nor had he (Bowers) seen the advertisement of the sale.

Billig, the auctioneer, testified that about five days before the sale

"[w]e were notified by phone that Crest had an interest in the sale and we referred them to Mr. Psoras. Now who called us from Crest and in what capacity I don't know."

Psoras testified he first became aware of Crest's interest a week or ten days before the sale when Billig telephoned him. He said Bowers also called him around that time and that they discussed the situation. Psoras said he asked Bowers if he planned to attend the sale, to which Bowers replied he might after he had investigated the status of Alatzas's lien. Stanley Radcliffe, Psoras's associate, said Bowers told him of his conversation with Psoras and that he (Bowers) admitted knowing when and where the sale was to take place. Bowers, of course, denied all of this.

Forty or more persons attended the sale. The bidding began at $10,000; Alatzas, at $13,000, was the highest bidder. The amount due him was $11,274.01; the expenses were $3,805; the deficiency amounted to $2,079.01. Crest does not claim the sale was not "commercially reasonable" as required by § 9-507(2) or that the collateral was not disposed of in the "good faith" required by § 1-203. The balance due it at the time, including attorney's fees of 15%, was $9,376.27.

Alatzas refurbished the place and operated the business, successfully it seems, until July 1970 when he sold it, this time for $22,000. It is this fact which seems to have exacerbated Crest's discontent. Its suit for damages, filed in March 1970, came on for trial before Cardin, J., without a jury, on 11 May 1971.

Judge Cardin thought the weight of the evidence was in favor of Alatzas and he found as a fact that Crest "did have actual notice of the sale." He went on to say,

"Even by giving * * * [Crest] the benefit of the doubt that * * * [it] did not see the notice in the paper, or that neither Mr. Psoras [n]or Mr. Billig informed * * * [it] of the sale, * * * [it] admits knowing of the sale on the day be-

fore the auction and from * * * its actions * * * [he found that Crest] had 'knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably prudent persons to investigate and ascertain as to the ultimate facts * * *.' [Citing 66 C.J.S., *Notice*, Sec. 5.]"

Judge Cardin was also of the opinion that there had been substantial compliance with § 9-504(3). The pertinent part of § 9-504(3) follows:

"* * * Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market *reasonable notification of the time and place of any public sale* or reasonable notification of the time after which any private sale or other intended disposition is to be made *shall be sent by the secured party* to the debtor, and except in the case of consumer goods *to any other person who has a security interest in the collateral and who has duly filed a financing statement* * * * or who is known by the secured party to have a security interest in the collateral." (Emphasis added.)

What follows is an excerpt from the official comment to § 9-504:

"* * * Under subsection (3) the secured party in most cases is required to give reasonable notification of disposition both to the debtor and (except for consumer goods) to other secured parties who have filed in this state or are known to him. * * * *'Reasonable notification' is not defined in this Subtitle; at a minimum it must be sent in such time that persons entitled to receive it will have sufficient time to take appropriate steps to protect their interests*

by taking part in the sale or other disposition if they so desire." (Emphasis added.)

It seems fair to say that *written* notice is not expressly required by § 9-504 (3). But Crest insists the use of the word "send" necessarily connotes a notice in writing. Section 1-201 (38) defines "send" as follows:

> " *'Send'* in connection with any writing or notice means to deposit in the mail or deliver for transmission by any other usual means of communication with postage or cost of transmission provided for and properly addressed * * *. *The receipt of any writing or notice within the time at which it would have arrived if properly sent has the effect of a proper sending."* (Emphasis added.)

"Notice" is defined in § 1-201 (25), an excerpt from which follows:

> "A person has *'notice'* of a fact when
> (a) *He has actual knowledge of it;* or
> (b) He has received a notice or notification of it; or
> (c) From all the facts and circumstances known to him at the time in question he has reason to know that it exists." (Emphasis added.)

At first glance, to be sure, one does get the impression that "send" connotes a notice in writing but, upon closer inspection, it becomes quite clear, we think, that the receipt or acquisition of actual knowledge within the time a properly sent notification could have arrived amounts to compliance with the requirement of § 9-504 (3). Written notification could accomplish no more and, in this regard, it will be observed that § 9-504 (3) is satisfied merely by sending the notification; there is no requirement that it be received. *See Hawkins v. GMAC,* 250 Md. 146, 149 (1968) ; *Old Colony Trust Co. v. Penrose Industries Corp.,* 280 F. Supp. 698 (E. D. Pa. 1968) ;

*Hudspeth Motors, Inc. v. Wilkinson,* 238 Ark. 410, 382 S.W.2d 191 (1964).

Both the cases and the texts seem to support the position we have taken. Professor Anderson has said the notice of foreclosure need not be in writing, 4 Anderson, *Uniform Commercial Code* § 9-504:16 (2nd ed. 1971). In *Third National Bank & Trust Co. v. Stagnaro,* 25 Mass. App. Dec. 58 (1962), cited by Anderson, *supra,* it was said:

> "The statute above referred to [§ 9-504 (3)] is entirely silent as to how the notice should be sent. There is no requirement that it should be delivered in hand or sent by registered or certified mail. In fact there is no requirement that the notice shall be in writing. The only requirement is that 'reasonable notification' shall be sent to the defendant." *Id.* at 67.

Oral notice has been held to be sufficient. *GAC Credit Corp. v. Small Business Administration,* 323 F. Supp. 795 (W. D. Mo. 1971) ; *A. J. Armstrong Co. v. Janburt Embroidery Corp.,* 97 N. J. Super. 246, 234 A. 2d 737 (1967). *But see T & W Ice Cream, Inc. v. Carriage Barn, Inc.,* 107 N. J. Super., 328, 258 A. 2d 162 (1969).

We have found but one case which seems to hold that, regardless of actual notice, formal written notification must be sent. That case, *Foundation Discounts, Inc. v. Serna,* 81 N. M. 474, 468 P. 2d 875 (1970), relies, to a great extent, on *Barker v. Horn,* 245 Ark. 315, 432 S.W.2d 21 (1968), but we think the New Mexico court has misinterpreted *Barker.* Our reading of *Barker* persuades us that the notice was thought by the court to be invalid not because it was oral but because it did not specify the time of sale. Justice Fogleman said for his court:

> "The statute requires notice of the time and place of public sale. While only reasonable notification of the time after which a private sale will be made is required, appellee's oral notice

was of a sale to the highest bidder *without speci-fication of any time. For this reason it cannot be said to constitute reasonable notice.*" 432 S.W.2d at 22. (Emphasis added.)

Since we cannot say Judge Cardin's finding that Crest did have actual notice of the sale was clearly erroneous nor that he misapprehended the applicable law, we do not reach the question whether the notice of one day was reasonable in the circumstances. Maryland Rule 886. We shall affirm the judgment in favor of Alatzas against Crest for costs.

*Judgment affirmed.*
*Costs to be paid by the appel-lant.*