UMBAUGH POLE BUILDING CO., INC., *v.* SCOTT ET AL.,
APPELLEES; CAMBRIDGE PRODUCTION CREDIT ASSOCIATION,
APPELLANT.

(No. 78-793—Decided June 6, 1979.)

*Messrs. Redmond & Jones* and *Mr. Roger F. Redmond,* for appellees.

*Messrs. Davidson, Heckler, Riggs & Spahr, Mr. Walter P. Davidson, Mr. Michael G. Spahr, Messrs. Porter, Wright, Morris & Arthur, Mr. J. Ralston Werum* and *Mr. Allan E. Roth,* for appellants.

POTTER, J. The first proposition of law advanced by the appellant is worded as follows:

"A lending institution does not have any fiduciary duty to its debtor even if 'advice and counselling' are offered to the debtor by the institution."

Both on the record and on the law we find that said proposition of law, to the extent hereinafter set forth, is well taken. The relationship of debtor and creditor without more is not a fiduciary relationship. A fiduciary relationship may be created out of an informal relationship, but this is done only when both parties understand that a special trust or confidence has been reposed. See *Stenberg* v. *Northwestern Nat. Bank of Rochester* (1976), 307 Minn. 487, 238 N. W. 2d 218; *Hoover* v. *Cooke* (Tex. Civ. App. 1978), 566 S. W. 2d 19; *Guffey* v. *Washburn* (1943), 382 Ill.

376, 46 N. E. 2d 971. *Cf. Busher* v. *Fulton* (1934), 128 Ohio St. 485; *Gardner Plumbing* v. *Cottrill*(1975), 44 Ohio St. 2d 111; *In re Termination of Employment* (1974), 40 Ohio St. 2d 107; 23 Ohio Jurisprudence 2d 539, Fiduciaries, Section 3; Annotation, 70 A. L. R. 3d 1344, Bank as Fiduciary—Duty of Disclosure.

There was no property or interest of the Scotts entrusted to the association. The only basis for the finding of the fiduciary relationship was the association's giving of advice and counseling to the Scotts relevant to their loans and business activities. But here the offering and giving of advice was insufficient to create a fiduciary relationship. While the advice was given in a congenial atmosphere and in a sincere effort to help the Scotts prosper, nevertheless, the advice was given by an institutional lender in a commercial context in which the parties dealt at arms length, each protecting his own interest. See *Snow* v. *Merchants Natl. Bank of New Bedford* (1941), 309 Mass. 354, 35 N. E. 2d 213.

While this court generally will not weigh the evidence (see R. C. 2505.31), a review of the record, particularly the testimony of Mr. Scott, reveals that there is no evidence in the record that there was any relationship between the association and the Scotts, except for a simple debtor-creditor relationship. See 5 Ohio Jurisprudence 3d 167, Appellate Review, Section 593. There was no promise for a continuing line of credit, and while a limited amount of advice and counseling was given, this did not vitiate the business relationship because neither party had, nor could have had, a reasonable expectation that the creditor would act solely or primarily on behalf of the debtor. See *Guffey* v. *Washburn, supra.* Also, the rendering of advice by the creditor to the debtors does not transform the business relationship into a fiduciary relationship. The borrowers could not reasonably believe that the association was acting in a fiduciary capacity. See *Snow* v. *Merchants Nat. Bank of New Bedford, supra. Cf. Stenberg* v. *Northwestern Nat. Bank of Rochester, supra.*

We find that proposition of law No. 1 and our hold-

ing thereto is the keystone in this appeal, and the remaining propositions of law are thus locked in place. Proposition of law No. 2 is as follows:

"Damages for mental suffering, anguish and humiliation are not recoverable in the absence of malice on the part of the wrongdoer or contemporaneous physical injury inflicted on the aggrieved party by the wrongdoer. (*Columbus Finance* v. *Howard*, 42 Ohio St. 2d 178 [1975].)"

We have examined the cross-complaint of the Scotts, and we find no allegation relative to a cause of action for mental anguish and suffering. The record shows no proof of any physical injury or illness resulting from any action of the association. There was no proof or finding of malice on the part of the association. There was no basis whatsoever for the trial court to find that the Scotts endured the type of mental anguish and suffering subject to judicial redress. It was not prayed for nor was it proved nor could it be awarded under the doctrine expressed in *Columbus Finance* v. *Howard*, *supra*. The trial court apparently found that the sale of the Scotts' personal property, farm machinery, the forced sale of the Scott real estate plus a dubious reference to a racial slur resulted in the Scotts' anguish and mental suffering. First, the association was entitled to its remedies to satisfy, in some part, the Scotts' obligation to the association. While the sale or sales were disconcerting to the Scotts, they do not give rise to a cause of action for damages for mental suffering, anguish and humiliation. As to the alleged racial slur, again there was nothing in the pleadings which would establish this as a cause of action, and it is extremely questionable that the words were a racial slur or meant to be such. As was held in *Columbus Finance*, *supra*, there can be no recovery in the absence of malice and contemporary physical injury inflicted on the aggrieved party by the wrongdoer. The syllabus in that case is as follows:

"1. In an action for wrongful execution, actual malice, fraud or insult on the part of the wrongdoer must be shown in order to justify an award of punitive damages.

"2. Damages for mental suffering, anguish and hu-

miliation are not recoverable in an action for wrongful execution in the absence of malice on the part of the wrongdoer or contemporaneous physical injury inflicted on the aggrieved party by the wrongdoer.''

Proposition of law No. 5 is as follows:

''An action for fraud or deceit may not be based upon promises or agreements to do something in the future in the absence of proof that, at the time the promises were made, the promisor had no intention to perform that which he promised to do.''

In addition to the award for mental anguish and suffering, the court granted an award of $20,000 in punitive damages to the Scotts in connection with false representations.

Our comments relative to proposition of law No. 2 are equally relevant to proposition of law No. 5. Furthermore, there was no evidence at the trial of any discussion between the Scotts and the association relative to a line of credit. The discussions between the parties related only to a request for a specific sum and not to a line of credit, and may have resulted from the Scotts' misunderstanding of the purpose of an open-end mortgage, but there was no misleading on the part of the association. There certainly was no evidence in the record to support a finding of willfulness, wantonness or gross fraud to support an award of punitive damages. We find that the award of punitive damages is not supported by the evidence nor by the findings of the trial court.

Propositions of law Nos. 3 and 4 pertain to the application of the Uniform Commercial Code. They are as follows:

''3. If the notice given a debtor of the time and place of a public sale of his collateral under R. C. 1309.47(C) affords the debtor the opportunity to attend the sale, observe the conditions under which it is held, bid, if he chooses, to protect his interest or procure participation of others whose bidding might ultimately lessen the deficiency to be asserted against him, such notice is 'reasonable notification' to the debtor under R. C. 1309.47(C) even if it is not in writing.''

"4. Failure of a secured creditor to give written notification to the debtor of the time and place of a public sale of his collateral does not lead to automatic extinguishment of the remainder of the debt. Rather, under R. C. 1309.50 (A), the debtor may recover from the secured party any loss caused by a failure of the secured party to comply with the provisions of the Ohio Commercial Code relating to default and disposition of collateral, R. C. 1309.44 to 1309.50, inclusive."

The record in the trial court is extremely limited relative to the Ohio Uniform Commercial Code and its applicable sections. The trial court refers only to "the wrongful sale by the defendant, the Cambridge Production Credit Association, of the personal property of the defendants, Lelland and Vivian Scott."* It appears the trial court was basing its finding on the theory that the association could not have a deficiency judgment because of a breach of its alleged fiduciary relationship. The trial court evidently did not bottom its decision on the Ohio Uniform Commercial Code—R. C. 1309.47 and 1309.50(A). Thus, this court is asked to interpret and apply these Uniform Commercial Code sections on a meager foundation and vaporous record.

The only basis to deny the secured holder, the association, its deficiency judgment (except that for the alleged breach of a fiduciary relationship) would be the failure of the association to give "written" notice alleged to have been required under R. C. 1309.47. The notice requirement in R. C. 1309.47 is found in subdivision (C) which reads as follows: "[R]easonable notification of the time and place of any public sale * * * shall be sent by the secured party to the debtor * * *."

---

*Judge Stephenson, in a footnote to his dissent from the majority decision of the appellate court below, stated:

"The General Findings of the trial court are less than a model of specificity, and it is difficult to perceive the legal theory under which the court found the sale to be wrongful. To be sure, the court found the sale to be a forced sale. However, it is unclear whether it was legally insufficient notice to appellees, or whether it was the breach of a fiduciary relationship by appellant, or both, which led the court below to characterize the sale as wrongful."

We find that under the circumstances of this case R. C. 1309.47 does not require the denial of a deficiency judgment for the following reasons. The record reasonably discloses that the sale was a cooperative effort by the debtor and creditor to dispose of the secured items, thus rendering immaterial any questions of notice of sale and commercial reasonableness under the Uniform Commercial Code. See *Pine Bluff Production Credit Assn.* v. *Lloyd* (1972), 252 Ark. 682, 480 S. W. 2d 578; *Crest Investment Trust, Inc.,* v. *Alatzas* (1972), 264 Md. 571, 287 A. 2d 261; *Chase Manhattan Bank* v. *Natarelli* (1977), 93 Misc. 2d 78, 401 N. Y. S. 2d 404; *Commercial Credit Corp.* v. *Wollgast* (1974), 11 Wash. App. 117, 521 P. 2d 1191. Under the circumstances, written notice would be surplusage and would call for an adherence to a ritual.

It will be noted from the record that the Scotts sold, individually and privately, certain hogs subject to the security agreement by taking the hogs to the market. The questionable sale was held on the premises of the owner and the owner participated in this sale by arranging on his property, prior to the sale, the machinery and equipment subject to the sale. He had had numerous conversations with the auctioneer and the date of the sale was mutually agreed upon. The owner was present during the conduct of the sale.

Although we find R. C. 1309.47 and 1309.50 inapplicable, we nevertheless find that the notice provision of R. C. 1309.47 was met, under the facts of this case.

As pointed out in Judge Stephenson's dissent, *supra,* it is undisputed that Mr. Scott had actual notice for at least two weeks prior to the sale, and, since the purpose of notification requirement "is to enable the debtor to protect his interest and property * * * so * * * that it will not be sacrificed by a sale * * *" (see 4 Anderson's Uniform Commercial Code 618, Section 9—504:18), there is ample evidence to find that the association did not violate R. C. 1309.47, if, in fact, it is applicable.

While some courts have held that only written notice is sufficient under R. C. 1309.47 (U.C.C. 9—504), we find the

better rule to be set forth in *Hall v. Owen County State Bank* (Ind. App. 1977), 370 N. E. 2d 918, at page 925, as follows:

"The word 'send,' which is found in Section 1—201 (38), is defined in such a manner as to imply that the notice must be in writing. While some courts have indeed held that only a written notice will suffice under Section 9—504,[5] there is also authority to the contrary.[6] We feel that a rigid rule of law mandating a written notice in all cases conflicts with the general tenor of the UCC to reject strict procedural requirements and we would therefore read Section 1—201(38) in conjunction with Section 1—201(26) so as to impose upon the secured party the duty of taking reasonable steps to notify the debtor. *The fact that the notice was oral instead of written should not invalidate that notice as a matter of law but should instead be one of the factors considered in deciding whether or not the notice was reasonable.* [Emphasis added.]

"Although no defintion of 'reasonable notification' is contained in the UCC itself, Official Comment 5 to Section 9—504 contains this definition:

" 'Reasonable notification' is not defined in this Article; at a minimum it must be sent in such time that persons entitled to receive it will have sufficient time to take appropriate steps to protect their interests by taking part in the sale or other disposition if they so desire."

Cases referred to in footnotes Nos. 5 and 6 to the above quote are as follows: Footnote No. 5: *Delay First Nat. Bank & Trust Co. v. Jacobson Appliance Co.* (1976), 196 Neb. 398, 243 N. W. 2d 745, 19 UCC Rep. 994; *Foundation Discounts, Inc., v. Serna* (1970), 81 N. M. 474, 468 P. 2d 875, 7 UCC Rep. 854. Footnote No. 6: *Fairchild v Williams Feed, Inc.* (1976), 169 Mont. 18, 544 P. 2d 1216, 18 UCC Rep. 822; *Crest Investment Trust, Inc., v. Alatzas* (1972), 264 Md. 571, 287 A. 2d 261.

R. C. 1301.01 defines "notice" as follows:

" (Y) A person has 'notice' of a fact when:

" (1) he has actual knowledge of it; or

"(2) he has received a notice or notification of it; or

"(3) from all the facts and circumstances known to him at the time in question he has reason to know that it exists."

R. C. 1301.01(Z) states that a person receives notice when it comes to his attention.

We find, considering all of the factors, including the fact that the notice was oral, that the notice was reasonable. There was no good faith violation, and the Scotts had ample time to protect their interests at the sale. Written notification would not have given them more. See *Crest Investment* v. *Alatzas, supra* (264 Md. 571); *Chase Manhattan Bank, supra* (93 Misc. 2d 78).

Finding, for the reasons stated, that there was no violation of R. C. 1309.47, R. C. 1309.50 is not applicable.

Therefore, the judgment of the Court of Appeals is reversed and the cause is remanded to the trial court with instructions to enter judgment against the defendants Lelland Emmett Scott and Vivian Louise Chandler Scott on their cross-complaint and in favor of Cambridge Production Credit Association in the amount of $31,136.61, with interest from the date of the filing of its cross-complaint.

*Judgment reversed and cause remanded.*

CELEBREZZE, C. J., HERBERT, COLE, P. BROWN, SWEENEY and HOLMES, JJ., concur.

COLE, J., of the Third Appellate District, sitting for W. BROWN, J.

POTTER, J., of the Sixth Appellate District, sitting for LOCHER, J.