**MBANK DALLAS N.A. f/k/a Mercantile National Bank at Dallas, Appellant,**

v.

**SUNBELT MANUFACTURING, INC., Sunbelt Associates, A General Partnership, and Richard R. Wadsworth, Jr., Sheila Putnam, and Newton R. Serrio, Each Individually and as General Partners of Sunbelt Associates, Appellees.**

No. 05–85–00800–CV.

Court of Appeals of Texas, Dallas.

April 7, 1986.

Rehearing Denied May 12, 1986.

Michael J. Quilling, Jay J. Madrid, Winstead, McGuire, Sechrest & Minick, Dallas, for appellant.

Blair Dishman, Charles C. Fredericksen, Jack N. Ross II, Haynes & Boone, Dallas, for appellees.

Before STEPHENS, GUILLOT and STEWART, JJ.

STEPHENS, Justice.

MBank appeals from a final judgment granting appellees' motion for judgment non obstante veredicto and ordering that MBank take nothing from appellees. For the reasons set out below, the judgment is reversed and judgment rendered on the jury's verdict.

The record reflects that Sunbelt Manufacturing executed and delivered to MBank a promissory note which was subsequently unconditionally guaranteed by Richard R. Wadsworth, Jr., and that Sunbelt Associates executed and delivered a promissory note which was subsequently unconditionally guaranteed by Wadsworth, Sheila Putnam, and Newton R. Serrio. In connection with these notes, Sunbelt Manufacturing and Sunbelt Associates executed and delivered to MBank security agreements covering certain collateral described in these security agreements. Sunbelt Manufacturing and Sunbelt Associates defaulted on these notes by failing to pay the outstanding principal and interest as it became due. After attempts to negotiate renewal notes failed, appellees were notified of the default, and MBank began foreclosure proceedings. The proceeds from the subsequent public sale were insufficient to cover the indebtedness, and MBank filed suit against appellees for the deficiency.

At the trial, it was undisputed that MBank did not give appellees written notice of the foreclosure sale. However, MBank presented evidence that it gave ap-

pellees oral notice of the time and place of the sale. After the jury found that MBank did not fail to "send reasonable notification of the time and place of the intended sale" to each appellee, and that MBank disposed of the collateral in a commercially reasonable manner, the trial court granted appellees' motion for judgment non obstante veredicto and ordered that MBank take nothing from appellees. From this judgment MBank appeals. Appellees have filed a crosspoint of error.

We must determine whether MBank complied with the "reasonable notification" requirement of section 9.504 of the Texas Business and Commerce Code.[1]

### Reasonable Notification

■ Section 9.504(c) provides in pertinent part:

reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor.

MBank contends that "reasonable notification" under section 9.504 need not be in writing. Appellees counter that the words "shall be sent" contemplates written notice. We note that "reasonable notification" is not defined in the Texas Business and Commerce Code. *See* section 9.504, comment 5. The parties have not cited, nor have we found, any Texas case which addresses the precise issue raised here. Whether section 9–504 of the Uniform Commercial Code requires written notice

has been the subject of conflicting decisions around the nation. While some states require that the notice be written,[2] others allow oral notice.[3] We conclude that section 9.504(c) does not require that "reasonable notification" be in writing. Section 1.201(38) provides:

"Send" in connection with any writing or notice means to deposit in the mail or deliver for transmission by any other usual means of communication with postage or cost of transmission provided for and properly addressed and in the case of an instrument to an address specified thereon or otherwise agreed, or if there be none to any address reasonable under the circumstances. The receipt of any writing or notice within the time at which it would have arrived if properly sent has the effect of a proper sending.

We read section 1.201(38) in conjunction with section 1.201(26), which provides:

A person "notifies" or "gives" a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it. A person "receives" a notice or notification when

(A) it comes to his attention; or

(B) it is duly delivered at the place of business through which the contract was made or at any other place held out by him as the place for receipt of such communications.

We construe these sections to require the secured party to take reasonable steps to notify the debtor. Less than full and com-

---

1. All statutory references are to Tex.Bus. & Com.Code Ann. (Tex. UCC) (Vernon 1972).

2. *Executive Financial Services v. Garrison,* 722 F.2d 417, 419 (8th Cir.1983) (interpreting Missouri law); *DeLay First Nat. Bank & Trust Co. v. Jacobsen Appliance Co.,* 196 Neb. 398, 243 N.W.2d 745, 749 (1976); *McKee v. Mississippi Bank & Trust Co.,* 366 So.2d 234, 238 (Miss. 1979); *see Savings Bank of New Britain v. Booze,* 34 Conn.Supp. 632, 382 A.2d 226, 228 (1977) (dictum); *Foundation Discounts, Inc. v. Serna,* 81 N.M. 474, 468 P.2d 875 (1970).

3. *Bondurant v. Beard Equip. Co.,* 345 So.2d 806, 809 (Fla.Dist.Ct.App.1977); *Hall v. Owen County*

*State Bank,* 175 Ind.App. 150, 370 N.E.2d 918, 925 (Ind.App.1977); *Maryland Nat. Bank v. Wathen,* 288 Md. 119, 414 A.2d 1261, 1264 (1980); *Third Nat. Bank & Trust Co. v. Stagnaro,* 25 Mass.App.Dec. 58 (1962); *Fairchild v. Williams Feed, Inc.,* 169 Mont. 18, 544 P.2d 1216, 1219 (1976); *A.J. Armstrong Co. v. Janburt Embroidery Corp.,* 97 N.J.Super. 246, 234 A.2d 737, 746 (1967); *First Bank & Trust Co. of Ithaca v. Mitchell,* 123 Misc.2d 386, 473 N.Y.S.2d 697, 701 (1984); *Umbaugh Pole Bldg. Co. v. Scott,* 58 Ohio St.2d 282, 390 N.E.2d 320, 326 (1979); *see Aimonetto v. Keepes,* 501 P.2d 1017, 1019 (Wyo. 1972).

plete notice is required, *Siboney Corp. v. Chicago Pneumatic Tool Co.*, 572 S.W.2d 4, 6 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.), and whether the notice is oral or written is only one factor that should be considered in deciding whether or not the notice is reasonable.[4] This construction is consistent with the Code's purpose in requiring reasonable notification, that is, notice sufficient to enable the debtor to protect his interest in the collateral, and is also consistent with the "Code's scheme to make distinctions along functional rather than formal lines." *See Hall v. Owen County State Bank*, 175 Ind.App. 150, 370 N.E.2d 918, 925 (1977). *Chase Manhattan Bank, N.A. v. Natarelli*, 93 Misc.2d 78, 401 N.Y.S.2d 404, 411 (1977).

Further, if the legislature had intended to require written notice, it could have done so by including the word "written" in section 9.504.[5] We note that section 9.505 requires the creditor to send the debtor "written notice" of the secured party's proposal to retain the collateral in satisfaction of the obligation. "Only when it is necessary to give effect to the clear legislative intent can we insert additional words or requirements into a statutory provision." *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex.1981).

### Reasonable Notification Altered by Agreement

Appellees contend that pursuant to section 9.501(c),[6] the parties agreed that notice had to be mailed postage prepaid five calendar days prior to the related action to constitute "reasonable notification" under the Code. They further contend that MBank, having failed to mail notice to appellees, has not complied with section 9.504, and is, therefore, barred from obtaining a deficiency judgment. Appellees rely upon two sections of the security agreement to support their position. A section captioned "Remedies of Bank Upon Default" provides in pertinent part that "for the purposes of the notice requirements of the Code, Bank and Pledgor agree that notice given at least five (5) calendar days prior to the related action hereunder is reasonable." Under a section captioned "General," a subsection captioned "Notice" provides that "notice shall be deemed given or sent when mailed postage prepaid to Pledgor's address given above or to Pledgor's most recent address a shown by notice of change on file with Bank."

In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). We consider the entire writing in an effort to harmonize and give effect to all provisions. *Id.* "In harmonizing these provisions, terms stated earlier in an agreement must be favored over subsequent terms." *Id.*

We hold that, because the security agreement is so worded that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous and we construe the agreement as a matter of law. *Coker*, 650 S.W.2d at 393.

We conclude that the *only* agreement that the parties made regarding the standard by which fulfillment of the reasonable notice requirement of the Code was

---

**4.** The last line of section 1.201(38), which states that the receipt of any notice within the time at which it would have arrived if properly sent has the effect of a proper sending, supports this construction. "At first glance, to be sure, one does get the impression that 'send' connotes a notice in writing but, upon closer inspection, it becomes quite clear, we think, that the receipt or acquisition of actual knowledge within a time a properly sent notification could have arrived amounts to compliance with the requirements of § 9–504(3). Written notification could accomplish no more." *Crest Investment*

*Trust, Inc. v. Alatzas*, 264 Md. 571, 287 A.2d 261, 264 (1972).

**5.** California has amended its version of section 9.504 so as to require "notice in writing." Cal. Com.Code Ann. § 9504 (Deering 1986).

**6.** Section 9.501(c) provides that "the parties may by agreement determine the standards by which the fulfillment of these rights and duties is to be measured if such standards are not manifestly unreasonable."

to be measured was that notice must be given at least five days prior to any related action.[7] We further conclude that the "notice" subsection was simply a contractual "mailbox" provision; that is, for the purpose of counting the five day period if notice was mailed, it is deemed given or sent when mailed and not when received by the pledgor. Nowhere in the security agreement does MBank agree that, for the purpose of the notice requirement of the Code, notice must be sent by mail postage prepaid to be reasonable, and we are not free to make a new contract for the parties. *Hodges v. Braun*, 654 S.W.2d 542, 544 (Tex.App.—Dallas 1983, writ ref'd n.r.e.).

■ Furthermore, even if the security agreement could be construed as an agreement between the parties that notice mailed to obligor's address at least five days prior to the related action was to be the standard by which fulfillment of the duty to "send reasonable notification" was to be *measured,* we conclude that MBank, in giving appellees oral notice more than five days prior to the sale, met this standard. As construed above, the agreement would set a standard of "notice mailed to obligor's address," in which case actual receipt of the notice by appellees would be immaterial. As noted above, the purpose of the notice requirement of section 9.504 and the parties' agreement is to give the debtor the opportunity to protect his interest in the collateral by exercising his right of redemption under section 9.506, refinancing the debt and arranging for inspection by potential creditors, procuring interested buyers, or making other arrangements to insure that any disposition of the collateral is commercially reasonable. The actual *receipt* of notice by the debtor, be it oral or written, is a higher standard, more reasonably likely to achieve this purpose, than notice merely *sent* or *mailed* to the debtor. In that appellees actually *received* notice of the sale, *mailing* notice to appellees could accomplish no more. Because

there is sufficient evidence to support the jury's finding that MBank did not fail to send each appellee reasonable notification of the sale, and in light of our holding above, the judgment of the trial court is reversed. We next determine whether we reverse and render or reverse and remand for a new trial.

■ In a sole cross-point of error, appellees contend that the trial court committed reversible error in allowing a witness called by MBank to testify because the witness was not named in MBank's answers to interrogatories and his testimony materially affected the ultimate fact issue of "reasonable notification." The record indicates that the witness, James Bennett, a vice-president of MBank, was called during MBank's case-in-chief and as a rebuttal witness. During the case-in-chief, appellees' objection on the ground that Bennett had not been disclosed as a fact witness in MBank's answers to interrogatories was overruled. Bennett's testimony on direct examination concerned evidence of the amount of the indebtedness and did not concern an "ultimate fact issue." We conclude that any error in allowing Bennett to testify during the case-in-chief was harmless in that the testimony did not cause the jury to render a different verdict. *Grohn v. Marquardt*, 657 S.W.2d 851, 857 (Tex. App.—Austin 1983, writ ref'd n.r.e.).

■ Bennett was subsequently recalled by MBank as a rebuttal witness. He testified that, several months after the foreclosure sale, he met with Wadsworth and another MBank officer. He was asked the purpose of this meeting and appellees objected. The jury was removed, and Bennett's testimony about the meeting was developed. Bennett testified that at the meeting, Wadsworth told him that a bank officer had called Wadsworth prior to the sale and told him the date, time, and place of the sale. The trial court instructed Bennett not to mention anything about possible settlement negotiations that might have

---

**7.** MBank's oral notice to appellees was given more than five days prior to the foreclosure sale.

come up at this meeting. No other rulings were made on appellees' objection. The jury was returned and Bennett testified about the meeting. Bennett's testimony was identical to that given outside the jury's presence. Appellees raised no objection to Bennett's testimony. We conclude that any error in allowing Bennett to testify on rebuttal was waived.

In order to preserve the right to complain on appeal about the admission of testimony, appellees must have objected at the time the testimony was offered, *Pope v. Darcey*, 667 S.W.2d 270, 273 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); the objection must have been specific enough to enable the trial court to understand the precise nature of the objection, *Texas Municipal Power Agency v. Berger*, 600 S.W.2d 850, 854 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ); and appellees must have obtained a ruling on the objection. *Huckaby v. Henderson*, 635 S.W.2d 129, 131 (Tex.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). Having failed to preserve error, appellees' cross-point of error is overruled.

Because the amount of the deficiency is not disputed, the trial court's judgment is reversed and judgment is rendered on the jury's verdict.