**Vermont National Bank v. Richard Hamilton, Ann B. Hamilton, Robert C. Paquin, Phyllis Paquin, George R. Howard and Nancy M. Howard**

[546 A.2d 1349]

No. 86-178

Present: **Allen, C.J., Dooley and Mahady, JJ., Barney, C.J. (Ret.) and Keyser, J. (Ret.), Specially Assigned**

Opinion Filed March 25, 1988

*Jerome I. Meyers*, White River Junction, for Plaintiff-Appellant.

*Plante, Richards, Hanley & Gerety*, White River Junction, for Defendants-Appellees Hamilton.

**Dooley, J.** This is an action for a deficiency judgment following the sale at public auction of certain collateral. The lower court denied the deficiency because it found that the plaintiff had failed to give proper notice of the sale to defendants. The plaintiff appeals from this ruling.

The plaintiff below, and appellant in this Court, is Vermont National Bank, the secured party. The debtor, Northeast Ecology Systems, Inc., (the company) went bankrupt and the action was tried against Richard and Ann Hamilton (defendants) who were guarantors of the obligation to plaintiff. Defendant, Richard Hamilton, was the vice-president of the company.

The company purchased steel racking in order to store large trays of earthworms. The plaintiff financed the purchase and took a security interest in the racking. The company was unable to pay the plaintiff. As a result, the plaintiff brought this action against the defendants and the company,[1] and sought an order giving it immediate possession of the steel racking as well as an award of damages. The parties were able to settle the issue of possession of the racking, and the settlement was incorporated into an order of the court of May 7, 1981. The order provided that "constructive possession" of the racking would be turned over to plaintiff and that the racking "shall be sold for any commercially feasible, reasonable sum" with the proceeds applied to the debt due to the plaintiff. The sale was to occur within sixty days and if it was not so consummated, the plaintiff could "resort to any and all legal remedies available." The order also provided that defendants would have the property appraised and that they would store it on their leased premises or on any premises to which they moved if approved by the plaintiff.

Part of the intent of the order was to give defendants, including the company, an opportunity to find a purchaser for the racking. Although Richard Hamilton did contact some firms who might use the racking, neither he nor the bank sold the racking within the sixty day period provided in the order. The property was never appraised. Defendants moved the property to new leased premises where it had to be stored outside. Plaintiff was aware of the move and did not object. Plaintiff tried to find indoor storage

---

[1] The action was originally commenced against four other guarantors, the Paquins and the Howards. The judgment on appeal involved only Richard and Ann Hamilton.

without success. The racking rusted and declined significantly in value because of the outdoor storage.

Finally, plaintiff sold the racking at public auction on November 6, 1982. Plaintiff never notified defendants of the sale either orally or in writing. However, defendant Ann Hamilton read the auction announcement in the newspaper four or five days before the auction. She called the loan officer at plaintiff bank to confirm the sale. She attended the auction and did not bid.

The auction failed to produce sufficient proceeds to pay off the debt to plaintiff. Since the company was bankrupt, plaintiff sought damages against the defendants as guarantors. The amount sought was the remainder of the debt along with the expenses of selling the collateral and collection of the debt. Defendants raised a number of defenses related to the handling of the collateral and the sale. The trial court accepted one of these defenses—that the plaintiff failed to give proper notice of the sale to defendants as required by § 9-504(3) of the Uniform Commercial Code, 9A V.S.A. § 9-504(3). As a result, it denied plaintiff any deficiency and entered judgment for defendants.

Plaintiff claims the trial court erred in two respects: (a) the May 7, 1981 order of the court superseded the requirements of the Uniform Commercial Code so that a sale in conformance with that order was valid; and (b) the notice to defendants of the auction sale did comply with the requirements of § 9-504(3).[2] Before addressing these arguments, it is helpful to set forth briefly the applicable UCC provisions and our precedents.

Section 9-504 sets forth the procedures for a secured party to dispose of collateral after a default by the debtor. Among the requirements imposed by the section is that "reasonable notification of the time and place of any public sale . . . shall be sent by the secured party to the debtor . . . ." 9A V.S.A. § 9-504(3). The term debtor, for purposes of Article 9 of the UCC, is defined to include "the person who owes payment or other performance of

---

[2] The trial court apparently held, as an alternative ground for its decision, that the notice, even if it otherwise complied with Uniform Commercial Code § 9-504(3), was untimely because the defendants did not have sufficient time to protect their interests at the sale. Plaintiff challenges this holding, asserting the trial court failed to find the time that elapsed between when defendants read the newspaper notice and the date of the auction. Because we find against plaintiff on the main claim, we do not reach its challenge to the alternative holding.

the obligation secured, whether or not he owns or has rights in the collateral . . . ." 9A V.S.A. § 9-105(1)(d).

Two terms contained in § 9-504(3) are defined generally in the UCC. Section 1-201(26) defines "notifies" to mean "taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it." Section 1-201(38) defines "send" as follows:

> "Send" in connection with any writing or notice means to deposit in the mail or deliver for transmission by any other usual means of communication with postage or cost of transmission provided for and properly addressed and in the case of an instrument to an address specified thereon or otherwise agreed, or if there be none to any address reasonable under the circumstances. The receipt of any writing or notice within the time at which it would have arrived if properly sent has the effect of a proper sending.

We have had opportunity in the past to analyze the collateral sale provisions of Article 9 of the Uniform Commercial Code. In *Chittenden Trust Co.* v. *Maryanski*, 138 Vt. 240, 244-45, 415 A.2d 206, 209 (1980) (citations omitted), we adopted the majority rule that "the secured party has the burden of pleading and proving that any given disposition of collateral was commercially reasonable, and preceded by reasonable notice." The Court in *Maryanski* found that the sale involved in the case was not made in a commercially reasonable manner. *Id.* at 246, 415 A.2d at 210. It adopted the majority rule that "the secured party's duty to prove compliance with § 9-504(3) is a condition precedent to recovery of a deficiency judgment." *Id.* See also *United States* v. *Lang*, 610 F. Supp. 292, 293 (D. Vt. 1985).

A second precedent on § 9-504(3) is *Adams* v. *B & D Builders & Developers, Inc.*, 144 Vt. 353, 477 A.2d 628 (1984), which, like this case, involved an action for a deficiency judgment against a guarantor of a debt and a defense of lack of notice. The Court held that guarantors of a corporate debtor's obligation are "debtors" under § 9-504(3) and therefore are entitled to reasonable notice of a collateral sale.[3] It found that § 9-504(3) did not provide the specific manner in which notice of sale of the collateral must

---

[3] This conclusion is clear from the wording of the definition of debtor in § 9-105(1)(d), although the Court did not cite this definition section.

be given. Without such guidance, it held that the Court "must focus on whether the secured party has taken 'reasonable steps' necessary to inform the debtor and other interested parties of the disposition" and that a showing of good faith by the secured party was relevant to reasonableness. *Adams*, 144 Vt. at 356, 477 A.2d at 631.

In *Adams*, the secured party had sent a written notice of the sale to a husband where the wife was also a guarantor. The Court held that since the husband and wife lived together and were co-owners of the corporation for which the debt was guaranteed, it was reasonable to assume that notice to one would be passed to the other. *Id.* at 357-58, 477 A.2d at 631-32. Thus, the notice was found to be reasonable, in compliance with § 9-504(3), even though the wife never actually received it.

Plaintiff argues that it complied with § 9-504(3) as the requirements have been interpreted in *Adams*. Before reaching this issue, we must dispose of plaintiff's claim that the 1981 agreement eliminated any requirement to give notice to the debtor under § 9-504(3) or acted as notice.

While plaintiff has framed its claim in a number of ways, the essence of its argument is that the defendants have waived the requirement on plaintiff to give them notice of the sale. As the next paragraph details, we do not think the facts support a waiver in this case. We note here, however, that even if plaintiff could show a waiver, it would face significant legal hurdles in enforcing it. Section 9-501(3) generally prohibits waivers of the notice requirements of § 9-504(3) by a debtor. A majority of courts have found this prohibition applicable to guarantors. See, e.g., *Prescott* v. *Thompson Tractor Co.*, 495 So. 2d 513 (Ala. 1986); *Shawmut Worcester County Bank* v. *Miller*, 398 Mass. 373, 379-80, 496 N.E.2d 625, 629 (1986). Judge Billings has so found in the United States District Court, predicting that we will do likewise. *United States* v. *Lang*, 621 F. Supp. 1182, 1184 (D. Vt. 1985). Some courts have excepted post-default waivers from the reach of § 9-501(3). See, e.g., *Simmons Machinery Co.* v. *M & M Brokerage, Inc.*, 409 So. 2d 743, 748 (Ala. 1981). These holdings are, however, difficult to reconcile with the fact that the official version of the Uniform Commercial Code was amended in 1972 to specifically authorize post-default waiver of notice. See Uniform Commercial Code § 9-504(3) in 3A Uniform Laws Annotated at

257-59 (1982).[4] That amendment was unnecessary if § 9-501(3) did not apply to post-default waivers. The amendment was not adopted in Vermont.

We cannot interpret the stipulated order of May 7, 1981 as a specific waiver of further notice of the disposition of the collateral. In fact, it was effective by its terms only for sixty days—the time within which defendant was to have arranged a sale. Thereafter, plaintiff was left to "any and all legal remedies available to them" as if there were no order. Rather than establishing a standard of performance of the notice obligation or attempting to disclaim the obligation, the stipulated order reinforces the duty of the plaintiff to comply with Article 9 on disposition of the collateral where the sale takes place after the sixty day period. It offers plaintiff no assistance in its appeal.[5]

■ Thus, we must address whether plaintiff complied with § 9-504(3). In support of a finding of compliance, plaintiff emphasizes two facts—(1) it "sent" a newspaper notice; and (2) defendants had actual notice of the sale.

Neither of these facts establish compliance with § 9-504(3) as that section is worded. The statute requires that "reasonable notification" be "sent." The definition of "sent" in § 1-201(38) requires transmission by mail or other "usual means of communication." A secured party does not send a notice to the debtor when it places it in the newspaper to alert the public to an upcoming sale. See *Bank of Camilla* v. *Stephens*, 234 Ga. 293, 216 S.E.2d 71 (1975); *Morris Plan Co.* v. *Johnson*, 133 Ill. App. 2d 717, 271 N.E.2d 404 (1971); *Liberty Nat'l Bank* v. *Greiner*, 62 Ohio App. 2d 125, 405 N.E.2d 317 (1978); see also *Rhodes* v. *Oaklawn Bank*, 279 Ark. 51, 648 S.W.2d 470 (1983) (for sale sign on property, adjacent to debtor's place of business, not notice to debtor). For two reasons, this deficiency is not saved by the last sentence of §

---

[4] The amendment is to the third sentence of § 9-504(3). It deletes the last clause which deals with notice to persons with a security interest in the collateral. It substitutes the following proviso to the notice requirement: "if he has not signed after default a statement renouncing or modifying his right to notification of sale." Even if this amendment had been adopted in Vermont, we could not find that the 1981 agreement and order dispensed with notice to the debtor.

[5] Defendants, for example, didn't arrange an independent appraiser or obtain plaintiff's approval for a new storage place for the racks, both as required by the order. Plaintiff didn't sell the racking within 60 days. Except for plaintiff's argument on notice, neither party claims in this Court that the other's breach of the agreement gives rise to a specific remedy.

1-201(38) which states that "[t]he receipt of any writing or notice within the time at which it would have arrived if properly sent has the effect of a proper sending." First, there is no sending at all in this case—the sentence cures deficiencies in the manner of sending, it does not create a sending where none exists.[6] Second, there is not in this case any "reasonable notification" as required by § 9-504(3) based on the definition of notification in § 1-201(26). This defect is not cured by actual notice.

We recognize that under § 1-201(25)(a) a person has notice of a fact if "he has actual knowledge of it." However, neither § 9-504(3), nor the definitions of the terms within it, indicate that the creditor complies when the debtor has actual notice of the public sale. Instead, § 9-504(3) imposes a process requirement to be complied with by the creditor irrespective of the debtor's knowledge. As we held in *Adams*, the focus of the statute is on whether the secured party has taken "reasonable steps" to notify the debtor. The secured party has not done so here.

At best, the curative last sentence of § 1-201(38), combined with the notice definition of § 1-201(25)(a), will allow a finding of compliance with § 9-504(3) where the creditor makes some effort to get personal notice to the debtor. For example, plaintiff points to a line of cases where *oral* notice was deemed sufficient under § 9-504(3) partly because the debtor had actual knowledge of the sale. See, e.g., *Hall* v. *Owen County State Bank*, 175 Ind. App. 150, 370 N.E.2d 918 (1977); *Crest Investment Trust, Inc.* v. *Alatzas, supra; Umbaugh Pole Building Co.* v. *Scott*, 58 Ohio St. 2d 282, 390 N.E.2d 320 (1979). Even this result is controversial, and many courts have held that oral notice is insufficient because of the wording of § 9-504(3) and § 1-201(38). See, e.g., *Executive Fin. Serv., Inc.* v. *Garrison*, 722 F.2d 417 (8th Cir. 1983); *McKee*

---

[6] None of the cases cited by the dissent clearly involve a failure to give personal notice, and we have found no case that carries the last sentence of § 1-201(38) that far. *Crest Investment Trust, Inc.* v. *Alatzas*, 264 Md. 571, 287 A.2d 261 (1972), involves personal notice given orally. *Chase Manhattan Bank, N.A.* v. *Natarelli*, 93 Misc. 2d 78, 401 N.Y.S.2d 404 (Sup. Ct. 1977), is factually indistinguishable from *Adams* v. *B & D Builders & Developers*, 144 Vt. 353, 477 A.2d 628, discussed above. The decision states "personal notice . . . will be required in most instances . . . ." 93 Misc. 2d at 90-91, 401 N.Y.S.2d at 412. The decision in *Leasing Service Corp.* v. *Diamond Timber, Inc.*, 559 F. Supp. 972 (S.D.N.Y. 1983), is less clear because it is decided on summary judgment without fact finding. It is significant, however, that plaintiff's allegation that it sent certified mail notice to defendant was not directly disputed. *Id.* at 978.

v. *Mississippi Bank & Trust Co.*, 366 So. 2d 234 (Miss. 1979); *DeLay First Nat'l Bank & Trust Co.* v. *Jacobson Appliance Co.*, 196 Neb. 398, 243 N.W.2d 745 (1976). The decisions allowing oral notice have faced significant criticism. See J. White & R. Summers, Uniform Commercial Code § 26-10, at 1112 (2d ed. 1980) (decisions accepting oral notice "are almost certainly contrary to the draftsmen's intent").[7]

We do not decide, however, whether we would accept oral notice to the debtor as complying with § 9-504(3). It would be a significant extension of these decisions to hold that actual knowledge of the sale will suffice to comply with § 9-504(3) where the creditor made no effort to transmit personal notice, oral or written, to the debtor. We can find no decision that has gone that far whether or not the Court would accept oral notice. The result would be inconsistent with the statutory language and would eliminate an essential debtor protection measure found necessary by the drafters of the UCC. See *Executive Fin. Serv., Inc.*, 722 F.2d at 418-19.

For the above reasons, we hold that the plaintiff was not relieved from complying with the debtor notification requirements of 9A V.S.A. § 9-504(3) by the May, 1981 order of the superior court and failed to comply with those requirements. Accordingly, it cannot collect a deficiency judgment, see *Chittenden Trust Co.*, 138 Vt. at 246-47, 415 A.2d at 210, and judgment was correctly entered for the defendants.

*Affirmed.*

**Allen,** C.J., dissenting. I must respectfully dissent. The majority opinion states that "neither § 9-504(3), nor the definitions of the terms within it, indicate that the creditor complies when the debtor has actual notice of the public sale." This statement overlooks the last sentence of § 1-201(38) which provides that: "The receipt of any writing or *notice* within the time at which it would have arrived if properly sent *has the effect of a proper sending.*" 9A V.S.A. § 1-201(38) (emphasis added).

---

[7] See also W. Willer & P. Hart, Uniform Commercial Code—Reporter-Digest, § 89-504 n.66, at 2-2020.42 (comment on *Crest Investment Trust, Inc.* v. *Alatzas, supra*, finding the reasoning "convoluted and contrary to the express language of [§ 1-201(38)] . . . which states that the notification 'shall be sent' ").

It is undisputed that the defendants here had actual knowledge of the time and place of the sale from the newspaper advertisement, and the subsequent confirmation with the bank. Under the Code, a person has "notice" of a fact when "he has actual knowledge of it," 9A V.S.A. § 1-201(25)(a), and receives a "notice" when "it comes to his attention." 9A V.S.A. § 1-201(26)(a). The receipt of actual notice constituted a proper "sending" under the facts before us. *Leasing Service Corp.* v. *Diamond Timber, Inc.*, 559 F. Supp. 972, 978 (S.D.N.Y. 1983); *Crest Inv. Trust, Inc.* v. *Alatzas*, 264 Md. 571, 576-77, 287 A.2d 261, 264 (1972); *Chase Manhattan Bank, N.A.* v. *Natarelli*, 93 Misc. 2d 78, 90-91, 401 N.Y.S.2d 404, 412 (Sup. Ct. 1977).

This construction is in keeping with the primary purpose of the notice requirement in 9A V.S.A. § 9-504(3), which is "to allow persons having any interest in the collateral or possible liability for a deficiency claim to do whatever is necessary to redeem the property or see that the disposition brings a fair price to minimize the deficiency." *Adams* v. *B & D Builders & Developers, Inc.*, 144 Vt. 353, 356, 477 A.2d 628, 631 (1984); see also 9A V.S.A. § 9-504(3) comment 5.

There is no reason under the Code or the decided cases to make a "reasonable steps" analysis where the debtor has actual knowledge of the information which the secured party is required to send under 9A V.S.A. § 9-504(3). The majority's reasoning that § 9-504(3) imposes a procedural requirement upon the creditor to "send" notice of the collateral sale to the debtor, irrespective of the debtor's actual knowledge, has potentially broad implications. Under this approach a creditor who failed to "send" written notice of the sale of collateral to the debtor would be denied a deficiency judgment even if the debtor had obtained actual knowledge through helping to arrange the actual sale.

The Supreme Court of Ohio directly confronted this situation in *Umbaugh Pole Building Co.* v. *Scott*, 58 Ohio St. 2d 282, 390 N.E.2d 320 (1979). That court ruled that "[u]nder the circumstances, written notice would be surplusage and would call for an adherence to a ritual." *Id.* at 291, 390 N.E.2d at 325.

Rejecting actual knowledge as satisfying the notice requirement of § 9-504(3) in this case moves the Court towards a position where, if confronted with a case factually similar to *Umbaugh*, a principled distinction might be impossible. See also *Comfort Trane Air Conditioning Co.* v. *Trane Co.*, 592 F.2d 1373, 1389

n.13 (5th Cir. 1979) (recognizing that the question of whether participation by the debtor in the liquidation process satisfies the notice requirement of § 9-504(3) is undecided in Georgia); *De Vita Fruit Co.* v. *FCA Leasing Corp.*, 473 F.2d 585, 588 (6th Cir. 1973) (implicitly accepting debtor instigation of the collateral sale as satisfying the notice requirement of § 9-504(3)).

Accordingly, because I feel that the requirement that notice be "sent" has been satisfied, this Court should consider whether or not it was timely under the circumstances.

I am authorized to say that Justice Mahady joins in this dissent.