LABATE et al., Appellants,

v.

NATIONAL CITY CORPORATION et al., Appellees.

[Cite as *Labate v. Natl. City Corp.* (1996), 113 Ohio App.3d 182.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 17536.

Decided July 31, 1996.

*John Hill* and *Tamara A. O'Brien,* for appellants.

*Daniel Friedlander,* for appellees.

SLABY, Judge.

Cathleen Labate ("the debtor") appeals from the Summit County Common Pleas Court's entry of summary judgment in her action against National City Bank, Columbus ("the bank"), on her complaint alleging breach of contract, breach of fiduciary duty, and tortious wrongdoing by the bank's determination that the debtor was in default on various promissory notes. We affirm.

The controversy in this case results from four student loans the debtor secured from the bank while she was a dental student at Ohio State University. After graduating in 1986, the debtor worked as a general dentist until July of the next year, when she quit work to begin a pediatric dental residency. While in her residency, she sought a deferment of her student loan payments from the bank. The deferment was denied, and the first payment on her loans with the bank came due that December. The debtor never made that payment, nor any thereafter. When the bank determined that she was in default on the loans, it instituted default proceedings.

In granting a motion for summary judgment, the court must be satisfied that there is no genuine issue as to any material fact, that the moving party is entitled to judgment as a matter of law, and that reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the motion. *State ex rel. Howard v. Ferreri* (1994), 70 Ohio St.3d 587, 589, 639 N.E.2d 1189, 1192–

1193; see, also, *McConville v. Jackson Comfort Sys., Inc.* (1994), 95 Ohio App.3d 297, 301, 642 N.E.2d 416, 419; Civ.R. 56(C). While a court must view the evidence most strongly in favor of the party opposing the motion for summary judgment, the motion forces the opposing party to produce evidence on all issues for which that party bears the burden of production at trial. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 114, 526 N.E.2d 798, 800–801.

Assignment of Error I

"The trial court erred in granting summary judgment, as genuine issues of material fact remain regarding whether [the bank] breached its contract with the [debtor] by refusing to grant [the debtor] the deferment to which she was entitled."

 The Supreme Court of Ohio has held that the law existing at the time a contract is executed becomes a part of that contract. *E. Mach. Co. v. Peck* (1959), 161 Ohio St. 1, 6–7, 52 O.O. 463, 465, 117 N.E.2d 593, 595–596. Accordingly, we consider not only the express terms of the contract, but also the relevant Federal Rules. The interpretation of both is a matter of law. See *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph one of the syllabus.

 When construing a contract, the intentions of the parties are to be "ascertained from the language of the instrument." *Blosser v. Enderlin* (1925), 113 Ohio St. 121, 148 N.E. 393, paragraph one of the syllabus. In reviewing the language, common words appearing in a written instrument will be given their ordinary meaning. *Alexander v. Buckeye Pipe Line Co., supra,* at paragraph two of the syllabus. If the meaning is unambiguous, a court will not create a construction contrary to its plain terms. *Aultman Hosp. Assn v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 544 N.E.2d 920, syllabus. Moreover, a written agreement does not become ambiguous simply because its operation will work a hardship on one of the parties and create an advantage for the other. *Ullmann v. May* (1947), 147 Ohio St. 468, 34 O.O. 384, 72 N.E.2d 63, paragraph one of the syllabus.

 Both the contract and the applicable Federal Rules are substantially similar and indicate that the debtor is not entitled to a deferment. The language of the loan agreements [1] limits a deferment to those programs "required" in order

---

1. While the language of all the loan agreements is not identical, the common requirement to the granting of a deferment provided that the student serve an internship in order to begin professional practice. .

to "begin" practice. Similar text appears in the governing federal law, former 62.210(g), Title 34, C.F.R.[2]:

"Internship deferment. (1) an eligible internship program is a supervised training program that * * *

"(i) is required in order for the borrower to begin professional practice or service, e.g. medical residency;

"(ii) requires the borrower to hold at least a bachelor's degree before beginning the internship program; and

"(iii) a state license agency required completion of before certifying the individual for professional practice or service." See, also, Ohio Adm.Code 3351–1–05.

"Required" means "to demand as necessary or essential." Webster's Third International Dictionary (1961) 1929. The limitation placed on the type of program qualifying for deferment becomes even clearer when read in the context of section (iii) of the rule. As the trial court correctly noted, section (iii) is less stringent than section (i). It does not "require" certification in order to "begin" practice, but allows a certification at any level of training. Thus, section (i) must be read to qualify section (iii). If not, section (i) would be superfluous.

It is undisputed that a dentist, unlike a physician, can begin practice without a residency. In fact, the debtor exercised her privilege to practice dentistry for approximately one year prior to beginning her pediatric residency. As such, she was not entitled to a deferment.

 The debtor further asserts that a jury issue existed concerning whether the bank acted in good faith and fair dealing by not granting the deferment. She asserts that the bank "acted rashly" and with an ulterior purpose in determining that she was in default on the loans and in not pursuing less drastic alternatives. She notes the fact that another bank had deferred its loans with the debtor over the same matter, that the bank's risk of loss was slight when compared to the debtor's heavy loss, and that, had the bank not instituted default proceedings on the loans, she would have finished her residency and, presumably, made more money.

---

2. The debtor argues that a change in the Federal Rules allowing the deferment for such a program after the loan agreement was executed should apply retroactively despite the lack of any indication from the language of the law. A subsequent amendment did clarify that the initial amendment should be applied to all loans regardless of the date of execution. However, by the time of the second amendment, the bank had already exercised its right to declare the debtor in default.

Reviewing this evidence in the light most favorable to the debtor, we find no merit in any of these contentions. In finding that the bad faith contractual claim was properly dismissed by the trial court in a similar situation, the Ohio Supreme Court recently pronounced:

" 'Although Bank's decision left Debtor scratching for other courses of credit, Bank did not create Debtor's need for funds, and it was not contractually obliged to satisfy its customer's desires. The Bank was entitled to advance its own interests, and it did not need to put the interests of Debtor * * * first. * * * It need not throw good money after bad, even if other persons would catch the lucre.' " *Ed Schory & Sons, Inc. v. Soc. Natl. Bank* (1996), 75 Ohio St.3d 433, 444, 662 N.E.2d 1074, 1083, quoting *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting* (C.A. 7, 1990), 908 F.2d 1351, 1357–1358.

The debtor conceded that "the decision to grant or deny a deferment was [the bank's] alone to make * * *." In addition, the debtor admitted that the forbearance alternative is but a temporary reprieve which is in the complete discretion of the lender. See Ohio Adm.Code 3351–1–05. It is also undisputed that the bank made no promises to the debtor other than those set out explicitly in the contract. See *Oehrtman v. Third Natl. Bank & Trust Co.* (1988), 61 Ohio App.3d 604, 607, 573 N.E.2d 710, 711–712.

Since one of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, we think it should be interpreted in a way that allows it to accomplish this purpose. See *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 323–324, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265, 274; see, also, *Williams v. First United Church of Christ* (1974), 37 Ohio St.2d 150, 151, 66 O.O.2d 311, 311–312, 309 N.E.2d 924, 925; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. Accordingly, the contract did not require a deferment nor did the debtor make a sufficient showing of egregious conduct on the issue of the bank's implied duty of good faith. The first assignment of error is overruled.

Assignment of Error II

"The trial court erred in granting summary judgment, as genuine issues of material fact remain regarding whether [the bank] owed a fiduciary duty to [the debtor]."

The debtor asserts that the bank owed her a fiduciary duty to grant the deferment. Nevertheless, she acknowledges that a "debtor[-]creditor relationship, without more, is not typically a fiduciary relationship." The Supreme Court of Ohio made this point clear in *Umbaugh Pole Bldg. Co. v. Scott* (1979), 58 Ohio St.2d 282, 12 O.O.3d 279, 390 N.E.2d 320, paragraph one of the syllabus; see, also, *Ed Schory & Sons, Inc.*, 75 Ohio St.3d at 442–443, 662 N.E.2d at 1081–1082.

In *Umbaugh,* the owners of a hog farm became involved in a variety of loans with a lending institution. The lending institution was chartered under a federal statute, and its primary purpose was to provide credit to farmers. In addition to providing the necessary capital, the institution offered advice and counseling to the owners relevant to their loans and business activities.[3] Ultimately, however, the owners did not prosper and became delinquent in their promised payments. In rejecting the owners' claim that the lender wrongfully refused to renew their line of credit and make additional advances, the court held that no fiduciary relationship arose *per se* from the debtor-creditor relationship. *Id.* at 287, 12 O.O.3d at 282, 390 N.E.2d at 323–324. Moreover, the court found that the rendering of advice and counseling did not vitiate the business relationship as "neither party had, nor could have had, a reasonable expectation that the creditor would act solely or primarily on behalf of the debtor." *Id.* It explained that a fiduciary relationship is created only when both parties understand that a special trust or confidence has been reposed in the creditor. *Id.* at 286, 12 O.O.3d at 281–282, 390 N.E.2d at 322–323.

In the case before us, the debtor has failed to demonstrate that the bank had an obligation to act in her interest. No advice was requested or given prior to signing the loans. The debtor admitted that she never talked to anyone at the bank, testifying that she received the loan applications from the loan officer at the dental school. Moreover, the debtor was involved in nineteen student loans, which financed her eight years of college education. She was certainly aware of the risks associated with default; specifically, what would happen if she did not find the position and the salary she expected. In fact, the debtor deliberately ignored the risks by giving up the practice of dentistry in Ohio to pursue a residency.

In light of the foregoing, we do not find that the facts of this case warrant a finding that such a fiduciary relationship existed. The second assignment of error is overruled.

Assignment of Error III

"The trial court erred in granting summary judgment when genuine issue[s] of material fact remain regarding whether [the bank] is liable in tort for its failure to act in good faith."

The debtor contends that the debtor-creditor relationship in the student loan context is similar to the insured-insurer relationship in which Ohio recog-

---

3. The advice included suggestions that the owners liquidate some of their assets so that they would be able to make payments on their home and maintain a scaled-down farming operation. The lending institution also later advised the owners to sell their farm equipment and hogs covered by the security agreement.

nizes a good-faith duty, the breach of which imposes liability sounding in tort. See, *e.g., Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 644 N.E.2d 397, paragraph one of the syllabus; *Hart v. Republic Mut. Ins. Co.* (1949), 152 Ohio St. 185, 39 O.O. 465, 87 N.E.2d 347, paragraph two of the syllabus.

We find no reason to extend the duty of good faith imposed in the insurance context to the student borrower situation. Liability or indemnity insurance policies ordinarily reserve to the insurer the decision whether an offer to compromise a claim against the insured should be accepted.[4] See, *e.g.,* 7 American Jurisprudence 2d (1980) 1114, Automobile Insurance, Section 380. Having assumed complete control of the right to settle claims against the insured, it is apparent that a conflict of interest may arise where there is an action or claim against the insured for an amount in excess of the policy coverage and an offer to compromise this claim for the policy limit or for a figure slightly below such limit. 7 American Jurisprudence 2d (1980) 1118, Automobile Insurance, Section 383. Because the insurer is purportedly acting in the interest of its insured with whom it has the policy, it has become a generally accepted rule that the former is bound to give some consideration to the interests of the latter. See *Hart v. Republic Mut. Ins. Co.* (1949), 152 Ohio St. 185, 39 O.O. 465, 87 N.E.2d 347, paragraph two of the syllabus.

The bank was not entrusted with such control over the debtor. Moreover, as discussed in our reasons for rejecting a creditor-debtor fiduciary relationship, the bank was not acting on the debtor's behalf. See *Stone v. Davis* (1981), 66 Ohio St.2d 74, 80, 20 O.O.3d 64, 67–68, 419 N.E.2d 1094, 1098–1099; see, also, *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.* (1993), 67 Ohio St.3d 274, 282, 617 N.E.2d 1075, 1081–1082. Indeed, their interests were diametrically opposed as the debtor desired to delay repayment for as long as possible while the bank desired the benefit of its bargain with timely payments. Nor is the safety of persons and property, which is the controlling consideration underlying tort law and which is paramount in the insurance context, at issue in the debtor-creditor relationship. See, *e.g., Suver v. Personal Serv. Ins. Co.* (1984), 11 Ohio St.3d 6, 8, 11 OBR 5, 6–7, 462 N.E.2d 415, 417–418; *Floor Craft Floor Covering, Inc. v. Parma Community Gen. Hosp. Assn.* (1990), 54 Ohio St.3d 1, 7, 560 N.E.2d 206, 211–212.

Even assuming the possibility of a bad-faith tort claim, no material issue of fact exists as to whether the bank breached a duty. Conduct which is predicated upon circumstances that furnish a "reasonable justification" therefor is not bad faith. See, *e.g., Staff Builders, Inc. v. Armstrong* (1988), 37 Ohio St.3d

---

4. The insurance policy provision authorizing the insurer to make such investigations, negotiations, and settlement of any claim or suit is deemed necessary to prevent collusion.

298, 303, 525 N.E.2d 783, 788–789. Likewise, Ohio law is clear that it is "no tort to breach a contract, regardless of motive." *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St.3d 272, 276, 6 OBR 337, 340–341, 452 N.E.2d 1315, 1319–1320; see, also, *Canderm Pharmacal v. Elder Pharmaceuticals, Inc.* (C.A. 6, 1988), 862 F.2d 597, 602; *Jurgens Real Estate Co. v. R.E.D. Constr. Corp.* (1995), 103 Ohio App.3d 292, 296, 659 N.E.2d 353, 355–356.

As we discussed in rejecting the debtor's bad-faith breach of contract claim, the record is devoid of any evidence tending to show a lack of good faith on the part of the bank in refusing to grant the deferment or a forbearance. The bank acted properly under the contract, and the debtor's attempt to transform a breach of contract into a tort must fail. The debtor's third assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and EDWARD J. MAHONEY, J., concur.

EDWARD J. MAHONEY, J., retired, of the Ninth Appellate District, sitting by assignment.