OPINION
Peter P. Renaut, defendant/third-party plaintiff-appellant, appeals a judgment of the Franklin County Court of Common Pleas granting a motion for summary judgment filed by Progressive I nsurance Company ("Progressive"), defendant-appellee.
The underlying facts in this case are the same as this court set forth in Nationwide Ins. Enterprises v. Progressive Specialty Ins. Co. (2001), Franklin App. No. 00AP-1474, and the following factual summary generally mirrors our factual summary in that case. In August 1996, Chase Motors, Inc., ("Chase Motors") purchased a 1994 Baja Outlaw boat. Chase Motors is a closely held corporation owned by Renaut. After purchasing the boat, Renaut had his office manager, Jackie Masters, contact his insurance agent, Craig Humphrey at Cole-Humphrey Insurance Agency ("agency"), to insure the boat. Masters claimed that she told Humphrey the year, make, and VIN number of the boat and told Humphrey that he would have to get any additional information from Renaut. Humphrey claimed that he told Renaut he needed more information about the boat, including its horsepower. He also claimed he told Renaut that Progressive would not insure boats greater than 350 horsepower. Humphrey alleged that someone later phoned the agency, and Vickie Gordon, an employee of the agency, recorded the information on the property change and other form, which indicated the Baja boat was 330 horsepower. Humphrey allegedly mailed an application for insurance through Progressive to Progressive and to Renaut for his signature, but Renaut did not return the application. Progressive issued an insurance policy for a 330 horsepower Baja boat with a liability limit of five hundred thousand dollars and excess coverage of one million dollars.
In August 1997, Robert Smith and others, with Renaut's consent, took the boat to Lake Cumberland, Kentucky. While Smith was operating the boat, he backed it over John Adams, whose leg was amputated. Upon learning of the accident, Renaut contacted Humphrey, who told Renaut that he needed to sign the application for the insurance policy that had been issued the previous year. Humphrey drove to Columbus and obtained Renaut's signature on the insurance application. However, while investigating the claim, Progressive inspected the boat and discovered that it had a horsepower of 415, not 330 as indicated in the policy. Progressive claimed that at the time the policy was issued, its underwriting guidelines prohibited the issuance of policies for single-engine boats exceeding 351 horsepower.
On January 16, 1998, the law firm of Brown, Todd, and Heyburn, LLC ("Brown Todd") filed, on behalf of Progressive, a declaratory judgment action against Renaut in Kenton Circuit Court in Kentucky. Progressive sought to have the policy declared void ab initio based upon the alleged misrepresentation in the insurance policy application. On May 7, 1998, Smith intervened as a defendant in the Kenton action. On November 3, 1998, Smith filed a third-party complaint in Kenton Circuit Court against Humphrey, alleging that Humphrey failed to obtain Renaut's signature on the insurance application until after the accident; thus, if Progressive was found not responsible for coverage, Humphrey should be liable for Renaut's failure to properly apply for coverage. After first denying Renaut's motion to dismiss based upon lack of personal jurisdiction, the Kenton court dismissed the action for lack of personal jurisdiction on May 7, 1999. Progressive filed a motion to vacate, alter, or amend the dismissal of the case, and, on August 6, 1999, the Kenton court denied the motion and dismissed Progressive's complaint against Renaut.
On August 18, 1999, Adams settled a personal injury action against the insurance carrier for Smith, Nationwide Insurance Enterprises ("Nationwide"), for one million five hundred thousand dollars. Progressive, Renaut, and Chase Motors were not parties to the action between Adams and Smith.
On August 23, 1999, Nationwide filed a subrogation claim against Humphrey, Renaut (d/b/a Chase Motors), and Progressive in Franklin County, Ohio, seeking to recover Progressive's five hundred thousand dollar coverage limit. Nationwide claimed that Progressive materially breached its contract with Renaut or committed fraud by failing to pay the damages sustained by Adams. Nationwide also alleged that Humphrey breached his fiduciary duty with Renaut or committed errors and omissions for failing to obtain Renaut's signature on the Progressive application. On September 22, 1999, Nationwide dismissed Renaut and Chase Motors. Progressive moved to set aside the dismissal of Renaut and Chase Motors, Inc. on January 10, 2000.
However, on November 30, 1999, Progressive filed a third-party complaint in the Nationwide/Progressive action against Renaut, seeking apportionment, contribution or indemnity, and a declaration of rights that the policy was void ab initio. On June 28, 2000, Renaut filed a counterclaim against Progressive and a third-party complaint against third-party defendants Brown Todd. As against Brown Todd, Renaut alleged malicious prosecution, tortious interference with the contractual relationship between Renaut and Humphrey, and civil abuse of process. We upheld the trial court's dismissal of Renaut's third-party complaint against Brown Todd in Nationwide Ins. Enterprises v. Progressive Specialty Ins. Co., supra.
With regard to Renaut's counterclaims against Progressive, he alleged malicious prosecution, bad faith, unjust enrichment, tortious interference with contractual relations, and abuse of process based upon Progressive's actions in the declaratory judgment action in Kenton County and in the present litigation. On February 5, 2001, Progressive filed a motion to dismiss, which the trial court converted to a motion for summary judgment. On April 30, 2001, Progressive entered into a settlement agreement with Nationwide, whereby Nationwide would receive three hundred thousand dollars in full settlement of its five hundred thousand dollar subrogation claim, with Progressive paying two hundred fifteen thousand dollars and Cole-Humphrey's insurance carrier paying eighty-five thousand dollars. On June 8, 2001, the trial court granted summary judgment to Progressive on the counterclaim of Renaut. Renaut appeals the trial court's judgment, asserting the following assignment of error:
 THE TRIAL COURT ERRED WHEN IT GRANTED THE CONVERTED MOTION FOR SUMMARY JUDGMENT DISMISSING THE DEFENDANT/THIRD PARTY PLAINTIFF PETER RENAUT'S COUNTERCLAIM/CROSS-CLAIM AGAINST PROGRESSIVE INSURANCE.
Renaut argues in his assignment of error the trial court erred in granting summary judgment on his counterclaims for malicious prosecution, bad faith, unjust enrichment, tortious interference with contractual relations, and abuse of process. Pursuant to Civ.R. 56, summary judgment is appropriate when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367, 369-370. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Mergenthal v. Star Banc Corp. (1997),122 Ohio App.3d 100, 103.
Renaut first claims the trial court erred in granting summary judgment on the malicious prosecution claim. The elements of malicious prosecution are: (1) malicious institution of prior proceedings; (2) lack of probable cause for filing the prior lawsuit; (3) termination of the prior proceedings in favor of the plaintiff; and (4) seizure of plaintiff's person or property in the prior proceedings. Crawford v. Euclid Natl. Bank (1985), 19 Ohio St.3d 135, 139. Renaut's counterclaim alleges that two separate acts constituted malicious prosecution: (1) Progressive maliciously filed the declaratory judgment action against him in Kentucky knowing that there was no jurisdiction in Kentucky; and (2) Progressive maliciously filed a motion to set aside Nationwide's September 22, 1999 voluntary dismissal of Renaut knowing that there was no such motion provided by the Ohio Civil Rules.
With regard to the claim that Progressive maliciously filed the declaratory judgment action against Renaut in Kentucky, knowing that court did not have jurisdiction, the trial court found that Renaut's claim was barred by the statute of limitations. We agree. The applicable statute of limitations for malicious prosecution is R.C. 2305.11(A), which provides that an action shall be commenced within one year after the cause of action accrues. A cause of action for malicious prosecution accrues upon the rendition in the trial court of a judgment for the defendant in the action complained of. Levering v. Natl. Bank (1912),87 Ohio St. 117, paragraph two of the syllabus.
The latest date at which the malicious prosecution claim could have ripened so as to trigger the statute of limitations set forth in R.C.2305.11(A) was May 7, 1999, the date of the judgment dismissing the declaratory judgment action filed by Progressive in Kenton County, Kentucky, for lack of personal jurisdiction. At that time Renaut knew, or in the exercise of reasonable judgment should have known, that he had a cognizable claim of alleged malicious prosecution against Progressive. Renaut did not file his counterclaim against Progressive until June 28, 2000, beyond the one-year period allowed in R.C. 2305.11(A).
Renaut contends that the latest date on which the malicious prosecution claim against Progressive could have ripened so as to trigger the statute of limitations was August 6, 1999. Progressive filed a motion to vacate the Kentucky court's May 7, 1999 dismissal, and the Kentucky court issued a subsequent order on August 6, 1999 denying Progressive's motion to vacate. Thus, Renaut argues his malpractice claim against Progressive, which was filed June 28, 2000, was filed within the one-year statute of limitations. We addressed this same argument in our memorandum decision denying Renaut's motion for reconsideration of our prior decision in Nationwide Ins. Enterprises v. Progressive Specialty Ins. Co., supra. As we indicated in that decision, Renaut does not direct us to any case law or other authority to support his proposition that the filing of a motion to vacate tolls the commencement of the statute of limitations for a malicious prosecution claim. To follow Renaut's logic would subject a party to malicious prosecution in perpetuity because any decision or order is subject to a motion to vacate at any time in the future, thereby tolling the commencement of the statute of limitations indefinitely. Although Renaut points out that under Kentucky Rules of Procedure 73.02(e) the motion filed by Progressive operated to stay the appealability of the court's May 7, 1999 decision, he still directs us to no case law indicating that such a motion would toll the statute of limitations for a malicious prosecution claim. Therefore, this argument is without merit.
With regard to the claim that Progressive was liable for malicious prosecution for filing the January 10, 2000 motion to set aside the voluntary dismissal of Renaut filed by Nationwide knowing there was no such motion provided for by the Ohio Civil Rules, Renaut presents no argument in his appellate brief regarding this issue. We agree with the trial court that a motion to vacate cannot constitute the basis for a malicious prosecution claim because such a claim requires a malicious "institution" of prior proceedings. See Trussell v. General Motors Corp. (1990), 53 Ohio St.3d 142. Further, the January 10, 2000 motion was never ruled upon and was "released"; thus, the trial court did not terminate the prior proceedings in favor of the plaintiff, which is a required element for malicious prosecution. Id. Therefore, even construing the evidence most strongly in favor of Renaut, we find there is no genuine issue of material fact with regard to his malicious prosecution claim, and reasonable minds can come to but one conclusion, and that conclusion is adverse to Renaut.
We next address Renaut's bad-faith claim against Progressive. Renaut asserted in his counterclaim that the actions of Progressive in filing the declaratory judgment action in Kentucky and in filing the third-party complaint seeking declaratory judgment in the case at bar were done in bad faith. Progressive's claims in its declaratory judgment actions were premised upon its allegation that the insurance policy was void ab initio due to material misrepresentations in the policy application.
In Preferred Risk Ins. Co. v. Gill (1987), 30 Ohio St.3d 108, the Ohio Supreme Court held:
 An insurer may maintain a declaratory judgment action under R.C. Chapter 2721 for purposes of establishing its rights and obligations under a contract of insurance. The insurer, if proceeding in good faith, is entitled to bring such an action for purposes of adjudicating its duty to defend and/or indemnify its insured in a tort action brought by a third party, even where the underlying tort complaint alleges conduct within the coverage of the contract of insurance. Id., paragraph one of the syllabus. (Citations omitted.)
The standard for a bad-faith claim was announced in Zoppo v. Homestead Ins. Co. (1994), 71 Ohio St.3d 552, wherein the court determined that an insurer fails to exercise good faith in processing a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor. A lack of reasonable justification exists where an insurer refuses to pay a claim in an arbitrary or capricious manner. Hart v. Republic Mut. Ins. Co. (1949),152 Ohio St. 185, 188.
The bad-faith standard enunciated in Zoppo has been applied to actions for declaratory judgment filed by an insurance company. See Nationwide Mut. Fire Ins. Co. v. Masseria (1999), Geauga App. No. 98-G-2197. Thus, before an insurance company files a declaratory action seeking to avoid indemnification, the insurance company, at the time of filing, must have a good faith belief that it is entitled to such relief. Id. Furthermore, this good-faith belief must be supported by evidence known to and relied upon by the company at the time the declaratory action was first filed. Id. Evidence that was not known or not relied upon is irrelevant when the issue concerns the good faith of the insurance company in making the decision to file a declaratory action. Id.
Summary judgment is appropriately granted to the defendant on a claim of bad faith where the record is devoid of any evidence tending to show a lack of good faith on the part of the defendant. See Labate v. Natl. City Corp. (1996), 113 Ohio App.3d 182. In the present case, the record is devoid of any evidence tending to show a lack of good faith on behalf of Progressive in filing its declaratory judgment actions. Progressive sought declaratory judgment in its third-party complaint under R.C.3911.06, which provides:
 No answer to any interrogatory made by an applicant in his application for a policy shall bar the right to recover upon any policy issued thereon, or be used in evidence at any trial to recover upon such policy, unless it is clearly proved that such answer is willfully false, that it was fraudulently made, that it is material, and that it induced the company to issue the policy, that but for such answer the policy would not have been issued, and that the agent or company had no knowledge of the falsity or fraud of such answer.
Thus, Progressive would have had to prove each of the requirements under R.C. 3911.06 in order to declare the policy void. The trial court found that after reviewing Progressive's third-party complaint and the referenced materials, it believed Progressive made the necessary preliminary investigation and that sufficient evidence existed and was known to Progressive to provide a good-faith basis for filing the declaratory judgment actions pursuant to R.C. 3911.06.
The only requirement under R.C. 3911.06 that Renaut challenges is the requirement that, but for the allegedly fraudulent answer, Progressive would not have issued the policy. Renaut points out that Progressive's 1996 Ohio application for policies of boat insurance contains a section for computing the premium amount, and the "surcharges" section clearly demonstrates that Progressive would cover a boat with an engine whose horsepower exceeds the manufacturer's horsepower ratings or a horsepower of 351 for a 50 percent surcharge on the premium amount. However, that Progressive could have hypothetically issued a different policy with different terms, conditions, and premiums for a boat engine exceeding 350 horsepower is irrelevant. What is pertinent is that Progressive would not have issued the current policy had it known the true engine horsepower. Progressive indicated such in its third-party complaint and attached an affidavit to its answer to the original complaint averring that it would not have issued the policy in question if it had known the boat had a 415 horsepower engine.
As the trial court pointed out, Progressive may not have ultimately prevailed on this requirement or any other but for the purposes of summary judgment in this case; it was only necessary to determine whether Progressive had a good-faith basis for seeking declaratory judgment. Renaut cannot demonstrate that Progressive would have issued the same policy with the same terms and conditions if it had known of the allegedly fraudulent answer prior to issuing the policy. Therefore, we find that the circumstances furnished Progressive a reasonable justification for filing its declaratory judgment actions.
We also note that there was a lack of evidence that Progressive knowingly made its claims in Kentucky knowing such was the wrong jurisdiction. Renaut can point to no evidence, and none exists in the record, to raise a genuine issue of material fact as to this claim. In fact, the Kentucky court originally found that it did have jurisdiction to hear Progressive's claims. Thus, summary judgment was also appropriate for this reason. Further, we agree with the trial court that Renaut's requests for further discovery were not relevant to his bad-faith claim because it is Progressive's knowledge at the time of filing that is relevant to determining whether there was a good-faith belief that it was entitled to declaratory relief. Masseria, supra. Therefore, Renaut has failed to raise a genuine issue of material fact as to whether, at the time of filing its declaratory judgment actions, Progressive had a good-faith belief that it was entitled to declaratory relief.
Renaut next argues the trial court erred in granting summary judgment on his claim alleging that Progressive willfully and maliciously tortiously interfered with the contractual relationship between him and Humphrey. The Ohio Supreme Court first formally recognized a cause of action for tortious interference with a contract in Kenty v. Transamerica Premium Ins. Co. (1995), 72 Ohio St.3d 415. In Kenty, the court set forth the elements of such an action as: (1) the existence of a contract; (2) the wrongdoer's knowledge of the contract; (3) the wrongdoer's intentional procurement of the contract's breach; (4) lack of justification; and (5) resulting damages. Id. at 419.
In the present case, there is a total void in the counterclaim regarding the existence of any contract between Renaut and Humphrey. As we stated in Nationwide Ins. Enterprises v. Progressive Specialty Ins. Co., supra, the counterclaim alleges that Humphrey was merely Renaut's insurance agent and does not give any indication as to what kind of a contract could have existed between the two. The only other contractual relationships that may be gleaned from the counterclaim were between Renaut and Progressive, Brown Todd and Progressive, and Progressive and Humphrey. Renaut claims in his memorandum contra that "obviously" there existed a contract between him and Humphrey whereby Humphrey procured insurance coverage for the boat in question. The trial court found that this statement alone raised a genuine issue of material fact as to whether a contract existed between Humphrey and Renaut. However, even assuming, arguendo, that such statement does raise a genuine issue of material fact as to the existence of a contract, we agree with the trial court that Renaut has simply failed to present any evidence, make any allegations or argument, or even give any enlightening explanations regarding Progressive's knowledge of the contract, the terms of the contract, any intentional procurement of the contract's breach, or a lack of justification for the interference. Therefore, even construing the evidence most strongly in favor of Renaut, we find there is no genuine issue of material fact as to Renaut's claim for tortious interference of a contract, and reasonable minds can come to but one conclusion, and that conclusion is adverse to Renaut.
With regard to Renaut's claim for civil abuse of process, the elements of a claim for abuse of process are: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process. Yaklevich v. Kemp, Schaeffer Rowe Co., L.P.A. (1994), 68 Ohio St.3d 294, paragraph one of the syllabus.
Renaut argues in his memorandum contra filed below that Progressive knew there was no jurisdiction over him in the Kentucky court when it filed its action there. His counterclaim also contained the allegation that the prior proceeding in Kentucky was initiated improperly and without probable cause because Progressive had prior knowledge that the Kenton Circuit Court did not have jurisdiction. It is clear from these allegations that Renaut has failed to raise a genuine issue of material fact relating to the first element of a claim for civil abuse of process, which is that a legal proceeding has been set in motion in proper form and with probable cause. To the direct contrary, Renaut's memorandum contra and counterclaim both argue that Progressive filed the action in Kentucky without probable cause. Therefore, Renaut has failed to raise a genuine issue of material fact with regard to this claim
With regard to Renaut's claim of unjust enrichment, to recover under the theory of unjust enrichment, the plaintiff must prove the following elements: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant had knowledge of the benefit; and (3) the defendant retained the benefit under circumstances where it would be unjust for him to retain that benefit without payment. Hambleton v. R.G. Barry Corp. (1984), 12 Ohio St.3d 179, 183. Additionally, unjust enrichment involves not only a loss by the plaintiff, but also the defendant must receive a gain. See id.
Renaut claims that Progressive has been unjustly enriched by retaining his premium payments while seeking to find the insurance policy void ab initio. Once again, we agree with the trial court that Renaut cannot demonstrate reasonable minds could conclude that Progressive retained a benefit under circumstances where it would be unjust for it to retain that benefit without payment. Progressive does not deny that it has retained the $1,705 in premiums, and agrees that if the policy were ever to be found void, Renaut would be entitled to a refund of its premium payments. However, Progressive has settled the five hundred thousand dollar underlying subrogation claim and has agreed to pay two hundred fifteen thousand dollars to Nationwide in full settlement of such claim on behalf of its putative insured, Renaut. Given Progressive's payment of such a large sum in settlement of claims on behalf of Renaut, reasonable minds could not conclude that Progressive unjustly retained any benefit by keeping the $1,705 in total premiums paid by Renaut for insurance coverage. Thus, there is no genuine issue of material fact with regard to Renaut's claim for unjust enrichment.
Accordingly, Renaut's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BOWMAN and LAZARUS, JJ., concur.